JOSEPH J. DOUDA v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railways:** INJURY TO EMPLOYEE: NEGLIGENCE: SUBMISSION OF ISSUES.
1 Where there was no evidence of any defects in a railway engine causing it to move without an application of steam, or that the company had reason to apprehend such an occurrence, and nothing to charge operators of the engine with knowledge of such defects, an instruction authorizing recovery for injury to an employee caused by its unexpected movement, while cleaning clinkers from the firebox, should not have been given.

**Same:** NEGLIGENCE: EVIDENCE. The movement of a railway engine
2 without an application of steam by the engineer is so improbable that the fact of its movement is some evidence that the person in charge was responsible therefor; and, taken in connection with the testimony of one injured thereby that the engineer at the time acknowledged adjusting the lever, which was competent as part of the *res gestae,* was sufficient to take the issue of negligence in that respect to the jury, although the engineer gave a different version of the conversation.

**Same:** LAST FAIR CHANCE. Where there was no evidence that the
3 engineer might have avoided the injury by exercise of diligence after discovering plaintiff's peril, the result of his contributory negligence, the issue involving the doctrine of the last fair chance ought to have been submitted.

**Same:** SETTLEMENT: FRAUD: EVIDENCE. Under a plea that an employee's
4 settlement of a claim for personal injury was procured by fraud, evidence that he and the members of his family present at the

trial were unable to read English was admissible, to show that the employee did not know the contents of the release and that the same was misrepresented to him.

**Same.** The statement of a claim agent in making settlement with an injured employee that he understood from the employee's physician that he would recover within a specified time is merely an expression of opinion, and will not justify setting aside the settlement on the ground of fraud; especially where the employee had the advice of his own physician and it did not appear that he relied upon the agents statement.

*Appeal from Linn District Court.*—Hon. J. H. Preston, Judge.

·Tuesday, January 26, 1909.

Action to recover damages for personal injuries sustained by plaintiff while in the employ of defendant. Verdict and judgment for plaintiff. Defendant appeals.— *Reversed.*

*Carroll Wright, J. L. Parrish* and *Grimm, Trewin & Moffitt,* for appellant.

*Barnes & Chamberlain* and *S. K. Tracy,* for appellee.

Ladd, J.—Plaintiff's employment at the time of his injury was that of cleaning out clinkers from the fire boxes of defendant's engines in its roundhouse at Cedar Rapids. The usual method of performing this work was to drop the "dump" by means of a bar from outside the wheels of the engine while it was standing over the ash pit, and to replace the dumping mechanism in the same way. But in this particular instance the plaintiff thought it necessary to crawl under the engine into the ash pit in order to close the dump. He advised the "hostler" in charge of the engine, who was in the engineer's cab, of his intention to go under, having had the engine moved to

what he considered a proper place for that purpose, and then proceeded to crawl, feet first, through the narrow opening between the drive wheels and above the side bar or connecting rod. When his body was part way through, the engine moved backwards, and the consequent rising of the side bar pinched or crushed the plaintiff, causing the injuries of which he complains. There was a question under the evidence as to whether plaintiff was not guilty of contributory negligence in attempting to go under the engine at all, or in attempting to go under it in the manner above described, but there is no complaint as to the instructions with reference to contributory negligence, and that feature of the case may be passed without further notice.

The defendant is alleged to have been negligent in two respects: (1) In that its hostler in charge of the engine, with knowledge that plaintiff was under it, without

1. RAILWAYS: injury to employee: negligence: submission of issues.

warning him started, moved, or permitted the engine to move; and (2) the engine was unsafe and defective, in that it would start forward without the lever being moved or steam being turned on or any action of the person in charge, and defendant, knowing this and plaintiff's position, took no precaution to prevent this, but allowed the engine to move, and thereby injure him. The evidence failed to point out any defect in the engine, or that it had ever started before without steam being turned on, or that defendant had any reason to anticipate such an occurrence. Nevertheless the jury was instructed that if they found "that said locomotive was unsafe and defective, in that it would start after being stopped without moving the lever therefor or turning on the steam for the purpose of starting it, and that it would with the knowledge of defendant or its employes in charge thereof start without any action on the part of those in charge thereof, and the defendant took no precaution or safeguards to prevent its said movements,

and that said locomotive was by reason thereof and the careless and negligent acts of the person in charge thereof, without notice or warning or signal to the plaintiff, started and permitted to run upon the body of plaintiff while under said engine and doing said work, and that by reason thereof plaintiff was injured," then, if such injuries were without fault of plaintiff contributing thereto, plaintiff was entitled to recover. Even though this instruction be conceded to be correct in the abstract, the evidence was not such as to authorize it. There was nothing in the record to charge the employees operating the engine with knowledge of any defect therein or to indicate any information concerning it on defendant's part. Even if the engine be conceded to have been defective, this was not shown to have been apparent or discoverable on reasonable inspection, nor does it appear from the evidence that the defect had existed prior to that night, or that defendant was negligent in failing to discover and repair it or in using it in the condition it was in. So that, even though it might be inferred from the moving of this locomotive engine without the application of steam or other agency, if it did so move, that it was then out of repair, there is no basis in the evidence on which to found a charge of negligence against the defendant, unless the doctrine of *res ipsa loquitur* be applied, and this under the peculiar facts of this case was precluded by a previous instruction "that the accident occurred will not of itself show negligence on the part of defendant, but you should determine the question (defendant's negligence) from all the facts and circumstances before you." Nor does the instruction first quoted proceed on the theory that such doctrine is applicable, but exacts specific findings from the evidence constituting the elements of negligence alleged. As to whether it should be applied in a case like this, there is some difference of opinion among the members of the court, and, as the cause was not tried on that theory, we

shall make no pronouncement on the subject at this time. But see valuable notes to *Fitzgerald v. Railway* (Minn.), 6 L. R. A. (N. S.) 337, and *Byers v. Carnegie Steel Co.* (Wash.), 16 L. R. A. (N. S.) 214.

II. But there was sufficient evidence to carry the case to the jury. True, the hostler in charge of the engine testified that he neither did nor omitted anything which might have caused the engine to move; but the engine was under his immediate control, and the movement of an instrumentality of such construction and great weight without the application of force is so extremely unlikely that the fact that it did move furnishes some evidence that the person in charge and whose duty it was to manage it was responsible for such movement. To this circumstance should be added the testimony of the plaintiff that immediately after getting from the engine, and while lying on the ground near by, he said to the hostler: "Harry, what in the hell have you been doing? You know I notified you." To this the hostler replied: "I didn't throw the lever in the center. I thought I had the steam shut off, but I didn't." This was admissible as a part of the res gestae. *Alsever v. Railway,* 115 Iowa, 338. Even though the hostler declared that plaintiff misunderstood him, and that he said instead that he had "put it [lever] in the center notch," and did not see what caused it to move, the question of veracity was for the jury, and from all the evidence they might have found that the movement of the engine was due to negligence of defendant's employee in charge.

*2. SAME: negligence: evidence.*

III. The court instructed the jury, in substance, that, even though plaintiff was negligent in attempting to go under the engine or in getting under it, yet, if defendant's employee in charge of the engine with knowledge of his peril could by the exercise of ordinary care have avoided the injury,

*3. SAME: last fair chance.*

the defendant was liable.   The evidence was not such as
to warrant the jury in finding that the defendant was
guilty of any negligence subsequent to conduct of plain-
tiff claimed to have constituted contributory negligence,
and for this reason the issue involving the doctrine of
last fair chance ought not to have been submitted to the
jury.

IV.   Much is said in argument of evidence and the
instructions to the jury on the question whether a settle-
ment evidenced by a written instrument pleaded and in-

4. SAME:
settlement:
fraud:
evidence.

troduced for the defendant was procured by
fraud.   Evidence that plaintiff and the
members of his family present at the time
when the agent for the defendant secured his signature
to this instrument of release were unable to read the Eng-
lish language was admissible under the issues; for, fraudu-
lent representations on the part of the agent being pleaded
as made for the purpose of securing such release, it was
competent to show that plaintiff did not, in fact, know
the contents of the instrument which he signed, and that
such contents were misrepresented to him by defendant's
agent.   The court erred, however, in leaving it to the jury
to say whether defendant's agent promised plaintiff a
job in connection with the securing of the instrument of
release; there being no evidence that any such promise
was made.

It was also error in connection with the allegations
of fraud to submit the question whether defendant's agent,
as an inducement to the settlement, represented that plain-

5. SAME.

tiff's injuries were slight, and that he would
soon recover therefrom.   The only evidence
as to such representations was that defendant's claim
agent at the time of procuring a settlement represented
that he understood from defendant's physician that plain-
tiff would be well in three weeks, and, further, that the
claim agent stated affirmatively that defendant would be

well in three weeks. It was not shown that the statement as to what the physician said was false, and the direct representation that plaintiff would recover in three weeks was evidently merely an expression of opinion not shown to have been fraudulently made. *Nason v. Railway,* 140 Iowa, 533; *Kilmartin v. Chicago, B. & Q. R. Co.,* 137 Iowa, 64. Furthermore, it does not appear that plaintiff relied on the claim agent's statements, for he insisted upon pay for four months' time which he would lose by reason of the injury. Plaintiff had had the advice of his own physician, and was in as good a situation as defendant's agent to know how soon he was likely to recover. A motion by appellee to strike appellant's reply is overruled.

For the reasons pointed out, the judgment of the trial court is *reversed.*